**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ELIZABETH VANDER WALL and PETER VANDER WALL, | |
| Plaintiffs, | |
| v. | CAUSE NO.: 2:26-CV-18-TLS-JEM |
| BRISTOL WEST INSURANCE COMPANY, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motions to Dismiss Counts II, IV and V, and VI of the Plaintiff's Complaint. ECF Nos. 5, 7, 9. The motions are fully briefed and ripe for ruling. For the following reasons, the Court denies the motions.

**LEGAL STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co*., 968 F.3d 802, 806 (7th Cir. 2020). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (cleaned up).

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs Elizabeth Vander Wall and Peter Vander Wall filed a Complaint [ECF No. 2] in the Lake County, Indiana, Superior Court on December 15, 2025, against the Defendant Bristol West Insurance Company. The Defendant removed the case under the Court's diversity jurisdiction on January 16, 2026. ECF No. 1. On January 23, 2026, the Defendant filed the instant Motions to Dismiss [ECF Nos. 5, 7, 9] as well as an Answer [ECF No. 11], to which the Defendant attached a copy of the relevant automobile insurance policy [ECF No. 11-1]. The motions are fully briefed. ECF Nos. 14–16, 19–21.

The Complaint alleges the following facts. On July 15, 2024, Merlin Kauffman, who was driving a vehicle in Lowell, Indiana, failed to yield the right of way, and turned into the path of the Plaintiff Elizabeth Vander Wall's vehicle, causing a sudden and violent collision. Compl. ¶¶ 5–9, ECF No. 2. Elizabeth was physically injured; suffered emotional distress; sustained severe personal injuries; incurred hospital and medical expenses; suffered physical pain, mental suffering, and loss of enjoyment of life; suffered lost time or wages and impairment of earnings capacity; and incurred other injuries and damages of a personal pecuniary nature. *Id.* ¶ 10.

At all relevant times, Elizabeth and Peter were married. *Id.* ¶ 22. Peter saw the pain and distress that Elizabeth endured after the crash, and Peter has been deprived of a portion of

2

Elizabeth's love, affection, companionship, services, and/or consortium which she ably provided before the collision. *Id.* ¶¶ 22–23.

Kauffman's insurer tendered the full insurance policy limits of $50,000.00, and the Defendant permitted the Plaintiffs to accept those settlement funds. *Id.* ¶ 11.

Elizabeth, Peter, and the vehicle Elizabeth was driving at the time of the collision on July 15, 2024, were covered by an automobile policy insured by the Defendant. *Id.* ¶ 13. The policy included underinsured motorist coverage for the injuries Elizabeth and Peter sustained from the collision. *Id.* ¶ 15. The underinsured benefit was $100,000.00. *Id.* ¶ 18; *Id.* Ex. A (Declaration Page); Answer Ex. A, ECF No. 11-1.[1]

On July 11, 2025, the Plaintiffs made a demand, via email, to the Defendant for all applicable insurance funds. Compl. ¶ 35. They included copies of the medical bills and records and an accounting of the physical pain and mental distress endured by Elizabeth because of the collision. *Id.* The physical pain and mental distress endured by Elizabeth due to the collision rendered her functionally incapacitated for approximately one year, leaving Peter to assume nearly all domestic and financial responsibilities. *Id.* The medical bills exceeded $27,632.19, and Elizabeth underwent ongoing treatment for depression, anxiety, and post-traumatic stress disorder. *Id.* ¶ 36. On August 26, 2025, the Defendant offered $2,500.00. *Id.* On September 10, 2025, the Defendant increased the offer to $5,000.00 to resolve Elizabeth's bodily injury claim. *Id.* ¶ 37. On November 11, 2025, the Plaintiffs' counsel forwarded to the Defendant the November 9, 2025 narrative report of an Independent Forensic Psychological Evaluation diagnosing Elizabeth with Generalized Anxiety Disorder, Major Depressive Disorder, and PTSD. *Id.* ¶ 38. On November 12, 2025, the Defendant lowered the offer to $3,500.00 to resolve Elizabeth's bodily injury claim. *Id.* ¶ 39.

---

[1] The Defendant's brief in support of its Motion to Dismiss Count II did not attach Exhibit B, which it cites in the brief as the insurance policy. *See* ECF No. 6, pp. 4, 6. However, because the Plaintiff does not raise the Defendant's failure to attach Exhibit B, the Court considers the insurance policy attached as Exhibit A to the Defendant's Answer for purposes of these motions to dismiss.

3

The Plaintiffs allege that the Defendant's conduct involved conscious wrongdoing, ill-will, and an intentional disregard of the Plaintiffs as the Defendant's insureds, amounting to bad faith. *Id.* ¶ 54. They further allege that the Defendant's conduct, including failure to pay reasonable insurance proceeds to the Plaintiffs, its insureds, and the delay were unreasonable, arbitrary, and capricious. *Id.* ¶ 55. Finally, the Plaintiffs contend that the Defendant's conduct was the result of malice, gross negligence, and oppression and not the result of mistake, error of judgment, or mere negligence. *Id.* ¶ 56.

The insurance policy contains the following relevant provisions.

**GENERAL DEFINITIONS**
. . .
6.  Bodily injury means bodily harm, sickness or disease, including death resulting from bodily harm, sickness or disease.

Answer Ex. A, ECF No. 11-1, p. 7.

**LIMIT OF LIABILITY**

The bodily injury liability limit for "each person" as shown in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, *including all derivative claims which include*, but are not limited to, *loss of consortium*, loss of services, loss of companionship, or injury to any personal relationship. **Bodily injury** to any one **person** *includes all injury and damages to others resulting from* this **bodily injury**.

Subject to the bodily injury liability limit for "each person", the bodily injury liability limit for "each accident" as stated in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**.

*Id.*, p. 10 (italicized emphasis added).

**EXCLUSIONS THAT APPLY TO PART C – UNINSURED/ UNDERINSURED MOTORIST COVERAGE**
. . .
**LIMIT OF LIABILITY**
. . .
**2. Combined Single Limit**
. . .
The Uninsured/Underinsured Motorist Bodily Injury limit for each person as shown in the **Declarations** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, *including all derivative claims which include*,

but are not limited to, *loss of consortium*, loss of services, loss of companionship, or injury to any personal relationship. **Bodily injury** *to any one person includes all injury and damages to others resulting from* this **bodily injury**.

*Id.* pp. 15–16 (italicized emphasis added).

The Plaintiffs' Complaint brings the following claims against the Defendant: underinsured motorist, seeking the underinsured benefit in the amount of $100,000.00 (Count I); loss of consortium by Peter (Count II); breach of contract for failing to pay the underinsured motorist claim limits of $100,000.00 (Count III); breach of the duty of good faith and fair dealing (Count IV); bad faith for tortiously breaching the duty of good faith and fair dealing and acting in bad faith (Count V); and punitive damages (Count VI).

## ANALYSIS

The Defendant moves to dismiss Counts II, IV and V, and VI of the Complaint.

**A.      Motion to Dismiss Count II (Loss of Consortium) [ECF No. 5]**

Count II for loss of consortium alleges that "as a . . . direct and proximate result of the negligence of [the] underinsured motorist . . . , Peter has been deprived of a portion of Elizabeth's love, affection, companionship, services, and/or consortium which she ably provided prior to the wreck." Compl. ¶ 23. Peter seeks compensatory damages. *Id.* at Count II.

The Defendant argues that Peter's loss of consortium claim is derivative of Elizabeth's bodily injury claim under the underinsured motorist provision in Count I such that it does not trigger independent coverage because a loss of consortium does not constitute a separate "bodily injury" under the policy. The Plaintiffs agree that Peter's loss of consortium claim is subject to the same per person limit of liability as Elizabeth's bodily injury claim under the underinsured motorist provision but argue that Peter has stated a claim for loss of consortium and the Defendant has not paid Elizabeth's per person "bodily injury" limit under the policy. The Court agrees with the Plaintiffs.

5

In *Medley v. Frey*, cited by the Defendant, the plaintiff and her husband were injured when their vehicle was struck head-on by another vehicle. 660 N.E.2d 1079, 1079 (Ind. Ct. App. 1996). The husband suffered permanent, disabling injuries and could no longer serve as caregiver for the plaintiff, who had Parkinson's disease. *Id.* at 1079–80. The coverage limit under the tortfeasor's policy was $100,000 per person and $300,000 per accident. *Id.* at 1080. The insurance company paid the per person limit of $100,000 to the husband for the injuries he received in the accident but denied the plaintiff's claim for loss of consortium on the grounds that the claim arose from the husband's bodily injury, for which it has already paid the limit of coverage. *Id*. The question on appeal was not whether the plaintiff could bring a loss of consortium claim but whether the claim was subject to the per person limit of liability for her injured spouse under the tortfeasor's automobile liability policy. *Id.* at 1079. The insurance policy defined "bodily injury" as "bodily harm, sickness or disease, including death that results." *Id.* at 1080. Affirming summary judgment dismissing the plaintiff's loss of consortium claim, the Indiana Court of Appeals held that, because the plaintiff's loss of consortium claim was not an independent bodily injury but arose out of the bodily injury sustained by her husband and because the tortfeasor's insurer had already paid her husband the per person bodily injury limit of coverage, the plaintiff was "not entitled to recover for her loss of consortium beyond the policy limits paid to" her husband. *Id.* at 1081.[2]

---

[2] The Defendant also cites *Hanna v. Indiana Farmers Mutual Insurance Co.*, 963 N.E.2d 72 (Ind. Ct. App. 2012). However, *Hanna* is not on point as it involved a child wrongful death claim brought by the child's parents. *Id.* at 73. The court held that the two parents were only permitted one claim under the governing Child Wrongful Death Act. *Id.* at 77. And "assuming for the sake of argument that the [parents were] otherwise entitled to recover under their policy for [their child's] wrongful death," the court found that they were not "underinsureds" within the meaning of the policy because their recovery from the liability insurer exceeded the amount of their own underinsured coverage. *Id.*

The policy in this case, like the policy in *Medley*, defines "bodily injury" as "bodily harm, sickness or disease, including death resulting from bodily harm, sickness or disease." In addition, the underinsured motorist provision provides that the per person bodily injury limit is the maximum payable for all damages arising out of bodily injury sustained by any one person, "including all derivative claims, which include . . . loss of consortium." The Complaint does not allege that Peter sustained any physical injury but that his loss of consortium arises from the bodily injury allegedly sustained by Elizabeth. Thus, under *Medley*, Peter's loss of consortium claim under the underinsured motorist coverage of this policy is derivative of Elizabeth's bodily injury claim and is subject to the same $100,000.00 per person limit.[3]

However, as argued by the Plaintiffs and in contrast with the insurer in *Medley* that had paid the per person bodily injury limit for the spouse's injuries, the Defendant in this case has not paid any of the $100,000.00 underinsured motorist bodily injury limit. Elizabeth has only recovered $50,000 from the tortfeasor's insurer. While the Defendant is correct that Peter cannot succeed on a loss of consortium claim if Elizabeth does not have a bodily injury claim, the Defendant has not moved to dismiss Peter's loss of consortium claim on that basis. Nor does the Defendant argue that Peter cannot state a derivative claim for loss of consortium or that a derivative claim for loss of consortium cannot be recovered under the underinsured motorist provision. *See, e.g.*, *Troue v. Marker*, 252 N.E.2d 800, 806 (Ind. 1969) (holding that an uninjured spouse is entitled to recover for loss of consortium against the wrongdoer who injured the

---

[3] Although the Plaintiffs assert that *Medley* is distinguishable as involving a thirty-party liability insurance policy rather than a first-party underinsured policy, the Plaintiffs do not explain why this difference is material and the Court finds it is not. *See Am. Ambassador Cas. Co. v. Melton*, 210 F.3d 374, 2000 WL 148211, at *3 (7th Cir. Feb. 11, 2000) (recognizing the holding in *Medley* that loss of consortium is not an independent bodily injury and is subject to the per person limit of coverage under an automobile insurance policy and finding the fact "[t]hat *Medley* did not involve an [underinsured motorist] policy . . . unimportant to its underlying reasoning and precedential value").

spouse). In fact, the Defendant acknowledges that a derivative loss of consortium claim "is

barred *once* the applicable per-person limit for bodily injury is exhausted." Def. Br. 5, ECF No. 6

(emphasis added). Because there is no allegation that Elizabeth's per person limit for bodily

injury under the underinsured motorist provision has been exhausted, there is no basis to dismiss

Peter's loss of consortium claim under *Medley*.

Accordingly, the Court denies the Defendant's motion to dismiss the loss of consortium

claim in Count II.

**B.     Motion to Dismiss Count IV (Breach of the Duty of Good Faith and Fair Dealing) and Count V (Bad Faith) [ECF No. 7]**

Count IV alleges that the Defendant breached its duty of good faith and fair dealing by

refusing to pay policy proceeds without any rational, legitimate basis, causing an unfounded

delay in making payment, making an unfounded refusal to pay policy proceeds, and failing to

adequately investigate and evaluate the claim presented. Count V alleges that the Defendant

further acted in bad faith because its acts involved conscious wrongdoing, ill-will, and an

intentional disregard of its insureds; its conduct was unreasonable, arbitrary, and capricious; and

its actions were the result of malice, gross negligence, and oppression and were not the result of

mistakes, error of judgment, or mere negligence. The Defendant seeks dismissal of both claims,

arguing that the Complaint does not plausibly allege insurer bad faith.

Under Indiana law, "there is a legal duty implied in all insurance contracts that the insurer

deal in good faith with its insured." *Erie Ins. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993)

(citations omitted); *see Baldwin v. Std. Fire Ins.*, 269 N.E.3d 1197, 1204 (Ind. 2025) (quoting

*Erie Ins.*, 622 N.E.2d at 518). "The duty of good faith and fair dealing requires the insurer 'to

refrain from' certain behavior, including: (1) making an unfounded refusal to pay policy

proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and

8

(4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Baldwin*, 269 N.E.3d at 1207 (quoting *Erie*, 622 N.E.2d at 519). "[A]n insurer must give its insured's interests equal consideration with its own." *Id.* (citation omitted). Breach of this implied duty "exposes the insurer to compensatory damages, like any other breach of contract." *Id.* at 1204.

Indiana law also recognizes a claim for bad faith, which exposes an insurer to liability for punitive damages. *Id.* at 1203, 1204. "To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins.*, 774 N.E.2d 37, 40 (Ind. 2002) (citation omitted). "An Indiana bad faith claim generally requires 'evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Wood v. Allstate Ins.*, No. 3:11-CV-128, 2012 WL 6553000, at *5 (N.D. Ind. Dec. 14, 2012) (quoting *Monroe Guar. Ins. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005)). "Poor judgment and negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present." *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) (citation omitted); *see Thorne v. Member Select Ins.*, 899 F. Supp. 2d 820, 826 (N.D. Ind. 2012) (citing *Monroe Guar. Ins.*, 829 N.E.2d at 977; *Colley*, 691 N.E.2d at 1261); *Allstate Ins. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008).

The Defendant argues that Court IV merely repackages the allegations of the breach of contract claim in Count III and seeks to impose extra-contractual liability without satisfying the elements required for the tort. The Defendant suggests that the Complaint alleges that the Defendant offered to settle and pay the claim, not that it refused payment or denied coverage without a rational basis. The Defendant argues that a dispute over value constitutes a permissible good-faith dispute under Indiana law.

The Court finds that the Plaintiffs have stated a claim for breach of the duty of good faith and fair dealing in the Defendant's response to the Plaintiffs' demand for payment of the $100,000.00 policy limit that was subject to offset of the $50,000.00 already paid by the tortfeasor's insurer. Elizabeth suffered severe injuries in the collision, accumulating more than $27,000.00 just in medical bills. The Plaintiffs provided the Defendant with the medical records and an accounting of the physical pain and mental distress Elizabeth suffered from the collision, all of which left her functionally incapacitated for approximately one year. Peter also suffered a loss of consortium and assumed the household and financial responsibilities during that year-long period. Elizabeth continued to undergo medical treatment for her depression, anxiety, and post-traumatic stress disorder. The Defendant first offered $2,500.00 for Elizabeth's bodily injury only, which is 5% of the remaining $50,000 of the uninsured policy. Although the Defendant increased the offer for Elizabeth's bodily injury to $5,000.00, which is 10% of the remaining available policy, the Defendant subsequently *decreased* the offer to $3,500.00, which is 7% of the remaining policy limits. And the lower offer came after the Plaintiffs tendered the Independent Forensic Psychological Evaluation in November 2025, diagnosing Elizabeth generalized anxiety disorder, major depressive disorder, and PTSD.

As argued by the Plaintiffs, only "good faith disputes about the amount of the claim" provide a basis for recovery, and the Plaintiffs have alleged sufficient facts at this stage of the litigation to infer that the Defendant's dispute with the amount of the Plaintiffs' claims was not in good faith. *See Nelson v. Jimison*, 634 N.E.2d 509, 512–13 (Ind. Ct. App. 1994) (finding, on summary judgment, that whether the insurer's justification for disputing the value of the claim and the long delay in payment as a result were reasonable was a question for the jury on a claim for breach of the duty of good faith and fair dealing); *see also Schroeder v. Progressive Paloverde Ins.*, No. 1:22-CV-946, 2022 WL 17752171, at *6–7 (S.D. Ind. Dec. 19, 2022)

10

(finding that the plaintiff's allegations the insurer acted intentionally and unreasonably when it undervalued the property damage claims and understated the value of total-loss vehicles to avoid paying the full value of the claims were sufficient to state a claim for breach of the covenant of good faith and fair dealing); *Crane 1 Holdco, Inc. v. Cont'l Ins.*, No. 2:23-CV-205, 2023 WL 8254570, at *2 (N.D. Ind. Nov. 28, 2023) (allowing amendment of the complaint to add a bad faith claim where the plaintiffs alleged the insurer acted in bad faith by failing to tender policy limits toward a settlement, failing to indemnify the plaintiffs despite being required to do so, prejudicing the plaintiffs by leading them to believe the funds would be available for settlement, and putting their own financial interests before their obligations to the plaintiffs); *N. Shore Co-Owners' Assoc., Inc. v. Nationwide Mut. Ins.*, No. 1:18-CV-3632, 2019 WL 3306212, at *2 (S.D. Ind. July 22, 2019) (finding the plaintiff stated a claim for breach of the duty of good faith and fair dealing where the complaint sufficiently alleged facts to support the inference that the insurer intentionally attempted to deceive the plaintiff and denied liability without a rational basis).

Although the Defendant may be able to show this was simply a good faith dispute over the value of the Plaintiffs' claims, on these facts, the Plaintiffs have plausibly alleged a claim for breach of the duty of good faith and fair dealing. And the Plaintiffs allege that the Defendant's conduct involved conscious wrongdoing, ill-will, and an intentional disregard of the Plaintiffs as the insureds; the Defendant's failure to pay reasonable insurance proceeds to the Plaintiffs and the delay were unreasonable, arbitrary, and capricious; and the Defendant's conduct was the result of malice, gross negligence, and oppression and not the result of mistake, error of judgment, or mere negligence. Because bad faith need not be pleaded with particularity, the Court finds that the Plaintiffs have stated a claim for bad faith. *See Skinner v. Metro. Lif Ins.*, 829

F. Supp. 2d 669, 678–79 (N.D. Ind. 2010) (citation omitted); *Crane 1 Holdeco, Inc.*, 2023 WL 8254570, at *2 (citing *Skinner*, 828 F. Supp. 2d at 678).

Accordingly, the Court denies the motion to dismiss Counts IV and V of the Complaint.

**C.    Motion to Dismiss Count VI (Punitive Damages) [ECF No. 9]**

Count VI seeks punitive damages based on the same allegations underlying the Plaintiffs' bad faith claim. "Though punitive damages are prohibited 'in a breach of contract action', a bad-faith claim is 'an independent tort for the breach of the insurer's obligation to exercise good faith . . . upon which punitive damages may be based.'" *Baldwin*, 269 N.E.3d at 1204 (quoting *Erie*, 622 N.E.2d at 520). "Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing . . . ." *Erie*, 622 N.E.2d at 520 (cleaned up). At this stage of the litigation, the Plaintiffs, the insureds, have stated a claim for bad faith by the Defendant, their insurer, and thus may pursue punitive damages. The Court denies the motion to dismiss Count VI.

**CONCLUSION**

For the above reasons, the Court hereby DENIES the Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint [ECF No. 5], DENIES the Defendant's Motion to Dismiss Counts IV and V of Plaintiffs' Complaint [ECF No. 7], and DENIES the Defendant's Motion to Dismiss Count VI of Plaintiffs' Complaint [ECF No. 9].

SO ORDERED on April 24, 2026.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT